IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GEORGE JACKSON, as Personal Representative for the Estate of Lisa Jackson,<br><br>                Plaintiff,<br><br>vs.<br><br>UNITED STATES,<br><br>                Defendant. | Case No. 3:21-cv-00116-JMK<br><br>**ORDER DENYING MOTION TO STRIKE AND GRANTING IN PART MOTION FOR SUMMARY JUDGMENT** |

Pending before the Court are two motions from the Defendant. First, Defendant, United States ("United States" or "the Government"), filed a Motion for Summary Judgment at Docket 18. Plaintiff, George Jackson, responded at Docket 26 and Defendant replied at Docket 27. Second, Defendant filed a Motion to Strike at Docket 28. Plaintiff responded at Docket 29 and Defendant replied at Docket 30. As set forth below, the Motion to Strike is **DENIED**. The Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

In December 2018, Ms. Jackson, a forty-five-year-old woman, was a patient of the Sand Point Clinic ("the Clinic.")[1] Ms. Jackson had several health challenges,

---

[1] Docket 18 at 3; Docket 18-7 at 4 (Sealed).

including diabetes, hypertension, and obesity.[2] On December 3, 2018, Joanna Karlsen, a medical professional employed at the Clinic, treated Ms. Jackson for cold symptoms and diagnosed her with a lower respiratory infection.[3] To treat Ms. Jackson's lower respiratory infection Ms. Karlsen prescribed: "a Z Pack, an 8 day Prednisone taper, Robitussin AC and albuterol nebulizer treatments.[4] Ms. Karlsen did not perform a physical examination of Ms. Jackson on December 3, 2018.[5]

On December 7, 2018, Ms. Jackson returned to the Sand Point Clinic because she was experiencing persistent fatigue.[6] Karen Johansen performed a physical examination of Ms. Jackson and noted that Ms. Jackson's breathing had improved since her previous visit on December 3.[7] Ms. Johansen administered fluid intravenously, after which Ms. Jackson "felt much better, her color improved, she felt ready to go home."[8]

In the early hours of December 10, 2018, Ms. Jackson sought medical assistance from the Sand Point Clinic and was pronounced dead later that day.[9] At 1:30 a.m., Dispatch informed Nurse Practitioner ("NP") Kirkland, the medical provider on call, that Ms. Jackson had called seeking medical attention.[10] NP Kirkland returned Ms. Jackson's call, assuring her that "she was on an excellent antibiotic and that the

---

[2] Docket 18-3 at 1.
[3] Docket 18-2; Docket 18-3 at 1.
[4] Docket 18-3 at 1.
[5] Docket 26-1 at 28–29.
[6] Docket 18-3 at 1.
[7] *Id.*
[8] *Id.* at 2.
[9] Docket 18-4 at 1–2.
[10] *Id.* at 1.

*Jackson v. United States*  Case No. 3:21-cv-00116-JMK
Order Denying Motion to Strike and Granting in Part Motion for Summary Judgment  Page 2
Case 3:21-cv-00116-JMK   Document 32   Filed 12/05/23   Page 2 of 17

prednisone would help relieve [her] symptoms."[11]  Ms. Jackson called Dispatch again at 2:53 a.m. because she was having trouble breathing and informed Dispatch that NP Kirkland had "refused to see her."[12]  Dispatch called NP Kirkland who yelled, "[n]o, I am not going to see her, she was seen Monday and Friday and she's breathing perfectly fine."[13]  NP Kirkland's record indicates she returned Ms. Jackson's call at roughly 3:00 a.m., and that Ms. Jackson was not coughing, wheezing, or experiencing shortness of breath.[14]  At 3:00 a.m., Dispatch informed Denise Mobeck, the Sand Point EMS Director, of Ms. Jackson's two calls and that NP Kirkland was refusing to see Ms. Jackson.[15]

At 4:00 a.m., Dispatch again informed Director Mobeck that an ambulance was requested to pick up Ms. Jackson.[16]  Director Mobeck responded that if NP Kirkland refused to see Ms. Jackson, there "would be no one at the clinic to receive [Ms. Jackson] if the ambulance responded."[17]  At 4:25 a.m., Ms. Jackson's daughter sought medical help for her mother by first calling 911, and then knocking on the door of police officer housing.[18]  Officer Dave Anderson responded to Ms. Jackson's daughter and requested an ambulance for Ms. Jackson, who had collapsed and was having trouble breathing.[19]  During this time, NP Kirkland had been on the phone with Ms. Jackson but could not hear

---

[11] *Id.*
[12] Docket 26-4 at 1.
[13] *Id.*
[14] Docket 18-4 at 1.
[15] Docket 18-5.
[16] *Id.*
[17] *Id.*
[18] Docket 18-7 at 7.
[19] Docket 18-5 at 1.

*Jackson v. United States*  Case No. 3:21-cv-00116-JMK
Order Denying Motion to Strike and Granting in Part Motion for Summary Judgment  Page 3
Case 3:21-cv-00116-JMK   Document 32   Filed 12/05/23   Page 3 of 17

Ms. Jackson and called back using a different phone line.[20] When NP Kirkland called back, she asked Ms. Jackson to describe her current symptoms and explain why Ms. Jackson "felt worse and needed an ambulance."[21] Ms. Jackson indicated she was experiencing shortness of breath and difficulty breathing and then collapsed.[22]

When EMS responded, Officer Anderson and Sergeant Brent Nierman were performing cardiopulmonary resuscitation ("CPR") on Ms. Jackson.[23] EMS continued performing CPR and administered automated external defibrillator ("AED") shocks.[24] EMS transported Ms. Jackson to the Clinic and, upon arrival at the Clinic, Director Mobeck updated NP Kirkland concerning the AED shocks and CPR.[25] Director Mobeck observed that NP Kirkland was "very disorganized and basically spinning in circles not knowing what to do for the patient."[26] Ms. Jackson was pronounced dead at 6:07 a.m.[27]

George Jackson brought suit against the United States under the Federal Tort Claims Act ("FTCA"), alleging wrongful death, emotional distress, loss of consortium, loss of love and services, past pain, suffering, loss of capacity for enjoyment of life, mental distress, past and future economic loss, diminished earning capacity, and loss of society.[28]

---

[20] Docket 18-4 at 1.
[21] *Id.*
[22] *Id.*
[23] Docket 18-5.
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] Docket 18-4 at 2.
[28] Docket 1 at 4.

*Jackson v. United States*     Case No. 3:21-cv-00116-JMK
Order Denying Motion to Strike and Granting in Part Motion for Summary Judgment     Page 4
Case 3:21-cv-00116-JMK   Document 32   Filed 12/05/23   Page 4 of 17

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[29] The initial burden is on the moving party to show that there is an absence of genuine issues of material fact.[30] If the moving party meets this initial burden, the non-moving party must set forth specific facts showing that there is a genuine issue for trial.[31] The non-moving party must support its showing of facts with evidence that is admissible.[32] "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[33] All evidence presented by the non-moving party must be believed for purposes of summary judgment, and all justifiable inferences are to be drawn in its favor.[34] A court's function on summary judgment is not to weigh evidence or determine the truth of the matter, but rather to determine if there are genuine issues for trial.[35]

## III. DISCUSSION

The Court will first review the Government's Motion to Strike because "[a] trial court can only consider admissible evidence in ruling on a motion for summary judgment."[36]

---

[29] Fed. R. Civ. P. 56(a).
[30] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[31] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).
[32] *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).
[33] *Celotex Corp.* 477 U.S. at 317.
[34] *Id.* at 255.
[35] *Id.* at 249.
[36] *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

*Jackson v. United States*     Case No. 3:21-cv-00116-JMK
Order Denying Motion to Strike and Granting in Part Motion for Summary Judgment     Page 5
Case 3:21-cv-00116-JMK     Document 32     Filed 12/05/23     Page 5 of 17

A. **Motion to Strike**

The Government seeks to strike Exhibit 3 to Docket 26,[37] which is a publication titled *Respiratory rate: the neglected vital sign*. The Government argues that Exhibit 3 should be stricken because it is hearsay and Plaintiff has failed to establish the requirements under Federal Rule of Evidence 803(18) that would otherwise permit Plaintiff to rely on the publication.[38] Plaintiff responds that the Government failed to object to Plaintiff's reliance on the publication during the deposition of NP Kirkland and, thus, waived the objection.[39]

In *Fraser v Goodale* the Ninth Circuit explained that "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."[40] A court may consider documents presented in a form that is hearsay, if the contents of the documents would be admissible at trial.[41]

The *Fraser* standard allows the Court to include the contents of the publication in analyzing the Government's Motion for Summary Judgment, despite the fact that Plaintiff has failed to produce the publication in a form that would be admissible at trial.[42] In *Fraser*, the party moving for summary judgment sought to preclude the non-moving party from relying on a diary which was attached to a deposition.[43] The *Fraser* court concluded that the diary could be considered at the summary judgment stage because

---

[37] Docket 28 at 1–2.
[38] Docket 30 at 3.
[39] Docket 29 at 1–2.
[40] *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).
[41] *Id.*
[42] *Id.*
[43] *Id.*

*Jackson v. United States*  Case No. 3:21-cv-00116-JMK
Order Denying Motion to Strike and Granting in Part Motion for Summary Judgment  Page 6
Case 3:21-cv-00116-JMK   Document 32   Filed 12/05/23   Page 6 of 17

the contents of the diary could be introduced through direct testimony by the declarant or as a recorded recollection under Federal Rule of Evidence 803(5).[44]

In the case at hand Plaintiff likely could admit the publication into evidence using Federal Rule of Evidence 803(18). Under Federal Rule of Evidence 803(18), if a publication is determined reliable, then statements contained in the periodical which are called to the attention of an expert witness during cross-examination or are relied on by an expert witness during direct examination are not precluded by the rule against hearsay.[45] It is entirely foreseeable that Plaintiff's expert witness, Nurse Ebersole, may rely on the publication at trial and could establish the publication's reliability. Because the contents of the publication likely are admissible under *Fraser*, the Court will include the publication in its analysis of the Government's Motion for Summary Judgment. Therefore, the Government's Motion to Strike is **DENIED**.

**B.    Motion for Summary Judgment**

A plaintiff who files suit under the FTCA must demonstrate that the Government would be liable for the injurious conduct under state tort law.[46] Alaska tort law requires a Plaintiff claiming medical malpractice prove the following elements by a preponderance of the evidence:

> (1) that the plaintiff had a health care provider-patient relationship with the defendant at the time of the act complained of;

---

[44] *Id.* at 1037.
[45] Fed. R. Evid. 803(18).
[46] 28 U.S.C. § 2674.

*Jackson v. United States*                                                                           Case No. 3:21-cv-00116-JMK
Order Denying Motion to Strike and Granting in Part Motion for Summary Judgment                      Page 7
Case 3:21-cv-00116-JMK    Document 32    Filed 12/05/23    Page 7 of 17

> (2) the degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances, at the time of the act complained of, by health care providers in the field or specialty in which the defendant is practicing;
>
> (3) that the defendant either lacked this degree of knowledge or skill or failed to exercise this degree of care; and
>
> (4) that, as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care, the plaintiff suffered injuries that would not otherwise have been incurred.[47]

Generally, a plaintiff must prove those elements through expert testimony unless the claim is "non-technical [] where negligence is evident to lay people."[48]

The Government makes two arguments in favor of summary judgment. First, the Government argues that Plaintiff can provide no expert opinion establishing the standard of care, breach or causation regarding the care received by Ms. Jackson on December 3 and 7, 2018.[49] Second, the Government argues that Plaintiff cannot prove the care Ms. Jackson received on December 10, 2028, was a proximate cause of her death.[50] Plaintiff counters that the care received by Ms. Jackson on December 3, 2018, fell below the relevant standard of care and caused her death. Plaintiff also argues that the conduct of NP Kirkland on December 10, 2028, caused non-economic harm during the ultimate hours of Ms. Jackson's life.[51]

---

[47] Alaska Stat. § 09.55.540.
[48] *Beistline v. Footit*, 485 P.3d 39, 43 (Alaska 2021) (internal quotations and citation omitted).
[49] Docket 18 at 10; Docket 27 at 3.
[50] Docket 18 at 11.
[51] Docket 26 at 10.

*Jackson v. United States*     Case No. 3:21-cv-00116-JMK
Order Denying Motion to Strike and Granting in Part Motion for Summary Judgment     Page 8
Case 3:21-cv-00116-JMK    Document 32    Filed 12/05/23    Page 8 of 17

**(1) December 3, 2018**

The Government argues that Plaintiff failed to provide any expert opinion regarding the standard of care, breach, or causation as these elements relate to the care Ms. Jackson received on December 3, 2028.[52] The Court previously granted the Government's Unopposed Motion to Exclude Expert Testimony,[53] the effect of which is that Plaintiff may call only one expert, Nurse Ebersole, to testify at trial.[54] In her report, Nurse Ebersole states she reviewed available records and formed an opinion concerning the care Ms. Jackson received on December 10, 2018.[55] Nurse Ebersole's report does not discuss the care Ms. Jackson received on December 3, 2018.[56]

Plaintiff attempts to establish a *prima facie* case for negligence on December 3, 2018, relying on deposition testimony from (1) Dr. White, (2) NP Kirkland, (3) the expert report from Nurse Ebersole, and (4) information from a medical article entitled *Respiratory rate: the neglected vital sign*.[57]

First, Dr. White's deposition testimony fails to provide any basis for the standard of care Ms. Jackson should have received on December 3, 2018. During his deposition, Dr. White was asked whether Ms. Jackson should have been evaluated by a medical professional, assuming she was experiencing shortness of breath and given her elevated respiratory rate, obesity, history of smoking, and recent inactivity.[58] Dr. White

---

[52] Docket 18 at 10.
[53] Docket 25.
[54] Docket 18 at 10.
[55] Docket 18-7.
[56] *Id.*; Docket 26 at 9.
[57] Docket 26 at 9 n.38.
[58] Docket 26-1 at 21:3–11.

*Jackson v. United States*　　　　　　　　　　　　　　　　　　　　　　　　Case No. 3:21-cv-00116-JMK
Order Denying Motion to Strike and Granting in Part Motion for Summary Judgment　　　　Page 9
Case 3:21-cv-00116-JMK　　Document 32　　Filed 12/05/23　　Page 9 of 17

agreed that such circumstances would warrant an examination by a medical professional.[59] However, Dr. White stated he could not comment on the standard of care for a primary care provider,[60] and was unfamiliar with the credentials of the individual who assisted Ms. Jackson on December 3, 2018.[61] Dr. White clarified that he was not providing testimony regarding December 3, 2018, when he stated, "I would just reiterate I – my opinions are limited to the – the care and the potential for survivability on 12/10/2018."[62] Plaintiff cannot rely on Dr. White to establish the duty of care, breach, or causation as he explicitly stated that he was not offering a medical opinion regarding the care received by Ms. Jackson on December 3.[63]

Second, deposition testimony of NP Kirkland fails to establish the standard of care applicable to Nurse Karlsen's treatment of Ms. Jackson on December 3, 2018. Plaintiff argues that "[NP] Kirkland also agreed that a patient who was obese, sedentary due to recent illness with a history of hypertension and history of type two diabetes was at risk for [pulmonary embolism], and with the added symptom of shortness of breath and respiratory rate of 30, it was important to rule out [pulmonary embolism]."[64] The deposition testimony of NP Kirkland fails to discuss "the degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances, at the time of

---

[59] *Id.* at 21:12.
[60] *Id.* at 43:10–11.
[61] *Id.* at 21:18–20.
[62] *Id.* at 50:3–5.
[63] *Evans v. City of San Diego*, 913 F. Supp. 2d 986, 993 (S.D. Cal. 2012) ("Plaintiff cannot rely on Mr. Smith's deposition testimony to support Plaintiff's Monell claim where Mr. Smith explicitly stated that he was not giving an opinion on the Monell claim.").
[64] Docket 26 at 5.

*Jackson v. United States*  Case No. 3:21-cv-00116-JMK
Order Denying Motion to Strike and Granting in Part Motion for Summary Judgment  Page 10
Case 3:21-cv-00116-JMK   Document 32   Filed 12/05/23   Page 10 of 17

the act complained of, by health care providers in the field or specialty in which the defendant is practicing."[65] Plaintiff cannot rely on NP Kirkland to carry the weight of establishing the duty of care when the deposition testimony relied on never discusses what degree of care a medical professional like Ms. Karlsen ordinarily exercises.

        Third, Nurse Ebersole's expert report does not establish the standard of care required, whether Defendants breached that standard, or causation related to the care provided on December 3, 2018. Plaintiff argues that "Nurse Ebersole, faulted [NP] Kirkland for failing to include [Pulmonary Embolism] in a differential diagnosis based on Ms. Jackson's history and symptoms, but the same criteria applies [to] the presentation on" December 3.[66] Nurse Ebersole's expert report does not support Plaintiff's argument because Nurse Ebersole did not review the care received on December 3. Nurse Ebersole's report states she "reviewed the available records of Lisa Jackson to determine whether there was any nursing negligence with regard to the care she received on 12/10/2018."[67] The report's only meaningful reference to December 3, 2018, states, "Ms. Jackson was seen at the clinic on 12/3/2018 by Joanna Karlsen, CHA-C/III with complaints of having a cold."[68] Nurse Ebersole did not discuss what the standard of care should have been on December 3 based on the type of medical professional who cared for Ms. Jackson. Nor did Nurse Ebersole opine that the care provided on December 3 fell below the relevant standard of care.

---

[65] Alaska Stat. § 09.55.540; Docket 26-2.
[66] Docket 26 at 5.
[67] Docket 18-7 at 1.
[68] *Id.* at 4.

*Jackson v. United States*                                                     Case No. 3:21-cv-00116-JMK
Order Denying Motion to Strike and Granting in Part Motion for Summary Judgment          Page 11
Case 3:21-cv-00116-JMK    Document 32    Filed 12/05/23    Page 11 of 17

Nurse Ebersole's report specifically states she "would particularly like to review any deposition testimony that is obtained in this case."[69] After deposing Dr. White, Plaintiff could have asked Nurse Ebersole to opine on the care received December 3. However, Plaintiff failed to have Nurse Ebersole supplement or amend her report. Plaintiffs cannot now expand Nurse Ebersole's expert report beyond the opinions clearly expressed therein.

Lastly, Plaintiff relies on a publication, *Respiratory rate: the neglected vital sign*, for the proposition that a patient should receive a physical examination if their respiratory rate is 27 breaths per minute or greater.[70] Plaintiff's reliance is misguided. According to the article, "educational resources such as medical textbooks may contribute to under-appreciation of the importance of respiratory rate."[71] The article goes on to quote a medical textbook stating that "counting the respiratory rate is a traditional nursing observation, yet the precise rate is rarely of practical importance."[72] The article acknowledges that clinical, "documentation of the respiratory rate is currently poor," and argues that medical professionals should change their practices to incorporate, "[r]egular monitoring and documentation of the respiratory rate."[73] The article suggests that based on her respiratory rate, Ms. Jackson would have benefited from "immediate medical review," on December 3.[74] However, the article does not define what constitutes medical

---

[69] *Id.* at 9.
[70] Docket 26 at 9 n.38.
[71] Docket 26-3 at 3.
[72] *Id.*
[73] *Id.* at 4.
[74] *Id.*

*Jackson v. United States*     Case No. 3:21-cv-00116-JMK
Order Denying Motion to Strike and Granting in Part Motion for Summary Judgment     Page 12
Case 3:21-cv-00116-JMK    Document 32    Filed 12/05/23    Page 12 of 17

review, and similarly does not support the proposition that the standard of care applicable to Nurse Karlsen on December 3 demanded a physical examination.[75] The article argues that changing the current practices to include a greater emphasis on respiratory rate would improve patient health outcomes.[76] Plaintiff's reliance on the article is misguided because the article is inapposite with Plaintiff's assertion; the article demonstrates that the current standard of care does not require medical intervention based on a respiratory rate like the one documented on December 3, but that the standard of care should be changed.[77]

Plaintiff cannot demonstrate medical malpractice on December 3. Deposition testimony from Doctor White and NP Kirkland fail to establish the standard of care that applied to Ms. Karlsen. Similarly, Plaintiff's expert, Nurse Ebersole, has not opined on the care provided on December 3. Rather, her expert opinion is limited to her opinions regarding the care provided on December 10. Lastly, Plaintiff's reliance on *Respiratory rate: the neglected vital sign*, fails to establish what standard of care should have applied on December 3, whether there was a breach of that standard, and if that breach caused Ms. Jackson's untimely death. Summary judgement is thus proper as to the care provided December 3, 2018, and is therefore **GRANTED**.

**(2) December 10, 2018**

Having concluded that the Government is entitled to summary judgment regarding the care provided on December 3, 2018, the Court will now examine the

---

[75] *Id.*
[76] Docket 26-3.
[77] *Id.*

*Jackson v. United States* — Case No. 3:21-cv-00116-JMK
Order Denying Motion to Strike and Granting in Part Motion for Summary Judgment — Page 13

Case 3:21-cv-00116-JMK   Document 32   Filed 12/05/23   Page 13 of 17

Government's motion for summary judgment regarding the care provided on December 10, 2018. The Government argues that Plaintiff cannot demonstrate the treatment provided by NP Kirkland on December 10 was a proximate cause of Ms. Jackson's death.[78] Under Alaska law, a plaintiff is required to demonstrate causation of the alleged injury with expert testimony unless causation was of a non-technical nature.[79] The Government provides evidence through Dr. White that diagnosing and treating a pulmonary embolism is highly technical and requires significant medical expertise.[80] Based on that evidence, under Alaska law, causation must be proven through expert testimony.

The Government argues that NP Kirkland's care was not a proximate cause of Ms. Jackson's death. Dr. White opines that Ms. Jackson "would have died on December 10, 2018, due to the complications of her pulmonary embolism, irrespective of the treatment provided to her by Carol Kirkland."[81] Dr. White's expert report explains that acute pulmonary embolism occurs when blot clots outside of the heart dislodge from deep veins, are carried to the heart, and become stuck in the pulmonary artery.[82] Pulmonary embolisms are divided into three risk groups: low, intermittent, and high risk.[83] Pulmonary embolism symptoms are non-specific, and definitive diagnosis requires confirmatory imaging.[84] According to Dr. White, on December 10, 2018, the Clinic had Enoxaparin

---

[78] Docket 18 at 11–12.
[79] *Parker v. Tomera*, 89 P.3d 761, 766 (Alaska 2004).
[80] Docket 19 at 2.
[81] *Id.*
[82] Docket 18-9 at 3.
[83] *Id.*
[84] *Id.*

Jackson v. United States                                                  Case No. 3:21-cv-00116-JMK
Order Denying Motion to Strike and Granting in Part Motion for Summary Judgment          Page 14
Case 3:21-cv-00116-JMK   Document 32   Filed 12/05/23   Page 14 of 17

which can be used to treat low risk pulmonary embolism; however, the clinic did not have the necessary resources to treat high risk pulmonary embolism.[85] The Clinic is approximately two and a half hours by plane to the closest medical facility capable of providing tertiary level medical care.[86] Dr. White opines that on December 10, Ms. Jackson had high risk pulmonary embolism.[87] Dr. White believes that at 1:30 a.m. on December 10, when Ms. Jackson made her first call to the Clinic, the right ventricle of her heart was already failing.[88] If NP Kirkland had immediately seen Ms. Jackson at 1:30 a.m., and requested emergency medical air transportation to Anchorage, and assuming optimal flight conditions and crew availability, the emergency transport team would have arrived at the Clinic after 4:30 a.m.[89] Based on the actual progression of Ms. Jackson's symptoms, the medical transport crew likely would have arrived at the Clinic after Ms. Jackson experienced cardiac arrest related to her pulmonary embolism.[90] The chance of survival for patients who suffer cardiac arrest due to pulmonary embolism and are treated in an intensive care unit ("ICU") is twenty five percent or less.[91] In Ms. Jackson's case, she likely would have experienced an out-of-hospital cardiac arrest from her pulmonary embolism, and, assuming she was immediately taken to a tertiary medical center, her chance of survival would have been less than ten percent.[92] Dr. White concludes that "[i]f

---

[85] *Id.* at 5.
[86] *Id.* at 6.
[87] *Id.* at 5.
[88] *Id.* at 6.
[89] *Id.* at 5.
[90] Docket 18-7 at 6.
[91] Docket 18-9 at 6.
[92] Docket 19 at 3.

*Jackson v. United States*  Case No. 3:21-cv-00116-JMK
Order Denying Motion to Strike and Granting in Part Motion for Summary Judgment  Page 15
Case 3:21-cv-00116-JMK   Document 32   Filed 12/05/23   Page 15 of 17

Ms. Jackson had been seen by [NP Kirkland] after she called the Clinic at 01:30 on 12/10/2018, and had [NP Kirkland] immediately attempted to treat a suspected [pulmonary embolism] with the resources available at the Clinic and called for a medical transport, Ms. Jackson would, to a reasonable degree of medical certainty, still have died."[93]

Plaintiff fails to rebut the Government's argument that NP Kirkland's care was not the proximate cause of Ms. Jackson's death.[94] The Government has met its initial burden of establishing there is an absence of genuine issues of material fact that NP Kirkland's care was not the proximate cause of Ms. Jackson's death through Doctor White's expert report, declaration, and deposition testimony.[95] Plaintiff has failed to set forth specific facts showing that there is a genuine issue for trial regarding whether NP Kirkland's care was the proximate cause of Ms. Jackson's death. Summary judgment in favor of the Government is proper for Plaintiff's wrongful death claims relating to December 10, and is therefore **GRANTED**.

Plaintiff responds by arguing NP Kirkland repeatedly rejected Ms. Jackson's calls for help, which caused Ms. Jackson to suffer unnecessarily.[96] Plaintiff has pled non-economic claims for pain and suffering, as well as mental and emotional distress.[97] The Government does not address Plaintiff's arguments regarding the non-economic claims for

---

[93] Docket 18-9 at 6–7.
[94] Docket 26 at 7 (stating "ANP Kirkland's refusal to see Ms. Jackson on 12/10/18 and attempting to diagnose breathing on the phone was totally inappropriate and below the standard of care. Ms. Jackson may have died at this point anyhow because she had not received appropriate care earlier").
[95] Docket 18-9; Docket 19; Docket 26-1.
[96] Docket 26 at 1–11.
[97] Docket 1 at 4.

*Jackson v. United States*     Case No. 3:21-cv-00116-JMK
Order Denying Motion to Strike and Granting in Part Motion for Summary Judgment     Page 16
Case 3:21-cv-00116-JMK    Document 32    Filed 12/05/23    Page 16 of 17

non-economic damages from the December 10 care, or lack thereof, provided by NP Kirkland. Regarding the care NP Kirkland provided on December 10, Dr. White stated, "[w]ell, I think everybody has the same concerns with respect to her resistance to seeing the – the patients. And I don't think you even need to be a medical professional to have those concerns."[98] The Government has not met its initial burden as the moving party to demonstrate an absence of material fact regarding Plaintiff's remaining claims; therefore, summary judgment on those claims is **DENIED**.

IV. CONCLUSION

Defendant's Motion to Strike is **DENIED**. Defendant's Motion for Summary Judgment is **GRANTED** regarding the care provided on December 3, 2018. Defendant's Motion for Summary Judgment is also **GRANTED** regarding Plaintiff's wrongful death claim relating to the care provided on December 10, 2018, and is **DENIED** regarding Plaintiff's claims for non-economic damages relating to the care provided on December 10, 2018.

IT IS SO ORDERED this 5th day of December 2023, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge

---

[98] Docket 26-1 at 44.

*Jackson v. United States* Case No. 3:21-cv-00116-JMK
Order Denying Motion to Strike and Granting in Part Motion for Summary Judgment Page 17
Case 3:21-cv-00116-JMK Document 32 Filed 12/05/23 Page 17 of 17